[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Orders
THE COURT: The Court previously heard evidence on this case and today the Court will enter its decision. The Court intends to order a transcript of these proceedings, to sign the transcript which will serve as the memorandum of decision in this case.
Counsel, identify yourselves for the record.
MS. ECKERT: Lorraine Eckert for the plaintiff, Bonnie Gocka.
MR. CICCHIELLO: Lorenzo Cicchiello representing Mr. Gocka, Your Honor.
THE COURT: In this matter the Court finds that the parties were married on February 12, 1972 in Preston, Connecticut.
One party has resided in this state for at least one year preceding the filing of this complaint.
There are no minor children issue of the marriage and no minor children have been born to the wife since the date of the marriage.
Neither party has been the recipient of state assistance.
The marriage between the parties has broken down irretrievably, without prospect of reconciliation; therefore, the Court dissolves the marriage on the grounds of irretrievable breakdown.
The plaintiff wife is 49 years old and she is a high school graduate. She has taken one year of college courses. Her health has been effected by a prior automobile accident and a workplace injury.
She presently receives disability retirement from the State of Connecticut. Her gross benefit is $330 per week and her net weekly benefit is $304. CT Page 12848
Prior to taking disability retirement, she was employed in a laundry operated by the State of Connecticut.
She presently suffers from alcoholism and depression. She has received in patient treatment on many occasions and for extended periods of time over the last eight years.
She is only able to perform part time work and presently she is unemployed and she lives with her parents.
She has unpaid medical bills of $14,000.
The defendant husband is 49 years old. From the dissolution of marriage report the Court notes he has completed three years of high school education. He has recently been diagnosed and treated for diabetes. Presently the condition does not effect his ability to work full time.
The defendant is self employed in a business that rents operator equipped construction vehicles to towns for maintenance work. The defendant is the operator of the equipment. The defendant values this equipment at $17,500.
In 2001 the defendant earned from his business a net profit of $19,239 after deductions for depreciation expense of $11,126. The Court disallows this depreciation expense and finds his income for 2001 to be $30,365 or $584 a week gross.
The Court also finds this amount to be his current earning capacity.
The Court has utilized FINPLAN and inputted self employment income of $19,240 and nontaxable income of $11,126. This results in annual expenses for federal income tax of $1,227, state income tax of $69 and Social Security tax of $2,203, Medicare tax of $515, for total annual expenses of $4,414, leaving a net income of $26,352. This results in a weekly net income of $506.
Before becoming established in his business, the defendant was a teamster at Electric Boat for approximately 14 years. He is entitled to receive a pension from Electric of $200 per month when he is 62.
The defendant is eligible to reapply to the Teamsters Union.
The marital home is titled in the defendant's name alone, although previously was in the name of both parties. The property consists of CT Page 12849 approximately four acres of land, a two-bedroom home, a barn and a 2300 square foot three car garage that the defendant uses to store his business equipment.
The Court credits the appraisal of William Champagne and finds the value of the property to be $188,000.
The defendant during the marriage purchased and sold a house in Norwich. He purchased and sold the property for the same price, $29,000. To finance part of the purchase price the defendant borrowed from a home equity mortgage on the marital home and upon the sale of the Norwich property he took back a mortgage which has a balance of approximately $10,000.
Considering all the evidence regarding this transaction, the Court concludes that the defendant should retain the note and the home equity loan balance should not be deducted from the value of the marital home.
In the marital estate there is a 25 foot cabin cruiser that is encumbered by a loan having a balance of $4,927. The boat is presently offered for sale with a price of $29,000.
Both parties have presented evidence of fault caused by the other party. Considering the evidence, the Court concludes that both parties share equal responsibility for the breakdown of their marriage and the Court declines to assess fault against either party.
In formulating the orders the Court has considered the provisions of Connecticut General Statutes 46b-81 regarding property settlement property assignment; 46b-82 regarding alimony; and 46b-62 regarding attorneys fees.
Although the plaintiff receives a disability retirement, she requires continued support from the defendant. The Court reaches this conclusion after considering the length of the marriage, the employability of the parties and their earnings. The Court concludes the defendant should pay alimony to the plaintiff in the amount of $75 per week.
Although the land for the marital home came from the defendant's parents, the Court concludes that based upon the parties respective contributions, the length of the marriage and their respective opportunity for future acquisition of capital assets, the equity in the property should be divided equally between the parties.
The defendant will have the opportunity to refinance the property if he CT Page 12850 wishes to pay the plaintiff her share of the equity, otherwise the property will be sold and the proceeds divided equally.
The Court enters the following orders:
1) The defendant is to pay alimony to the plaintiff in the amount of $75 per week. The alimony shall terminate upon the death of either party or the plaintiff's remarriage.
Any increase in the amount of income the plaintiff receives shall not be a grounds for modification unless the plaintiff's income, including her disability retirement, exceeds $30,000 a years. Increase in the defendant's income shall not be a grounds for modification unless it exceeds $45,000 a year after disallowance of any depreciation deduction.
2) The defendant is to retain the marital home and he is to pay the plaintiff the sum of $90,000 as a property assignment. This sum is to be paid within 90 days of the date of judgment. If the payment has not been made within 90 days from the date of judgment, the defendant is ordered to list the property for sale. Upon sale, after deduction of the customary expenses of sale, the net proceeds, without deductions for any mortgage upon the property, shall be divided equally between the parties.
The Court retains jurisdiction to effectuate this order.
3) The defendant is to retain his interest in the mortgage note arising from the sale of the Norwich property.
4) The defendant is to retain the cabin cruiser and as an assignment of property he is to pay the plaintiff the sum of $5,000 for her interest in the boat within six months of the date of judgment. The defendant is to pay and hold the plaintiff harmless from the boat loan.
5) The defendant is to pay the plaintiff the sum of $5,000 as a contribution towards the plaintiff's medical bills within 30 days. The defendant is not entitled to reimbursement or credit for the sum of $792.52 he previously paid.
6) The defendant is to retain his business and his business assets.
7) The defendant is to retain the the amount of $600.
8) The plaintiff shall retain any State of Connecticut pension she is entitled to and her disability retirement. The defendant shall retain his CT Page 12851 General Dynamics pension.
9) Each party is to pay the debts shown on their respective financial affidavits and except as provided herein, each party shall retain the assets shown on their respective financial affidavits.
10) Each party is to pay their respective counsel fees.
Attorney Eckert, did your client have a request regarding her name?
MS. ECKERT: Your Honor, Mrs. Gocka requests the restoration of her maiden name.
THE COURT: The Court restores the plaintiff's maiden name of Bonnie Beck.
Are there any clarifications or omissions in the Court's orders? I will give you a moment.
MS. ECKERT: I assume that the alimony commences on today's date?
THE COURT: It does.
MR. CICCHIELLO: Your Honor, the only request that I would make is if we could have a bit more time for the $90,000 property, the split of the equity from the marital home. He has to go through an application process in order to obtain those funds for refinance. And 90 days maybe somewhat tight for him to accomplish that.
Secondly, he has an IRS check and we would just ask that Ms. Gocka sign that today. Her name appears on it.
THE COURT: With regard to the check, I will order that Ms. Gocka sign the check to effectuate the Court's order.
Attorney Eckert, do you wish to be heard on the time?
MS. ECKERT: Well, Your Honor, I believe it is inappropriate for either one of us to now change orders. I think Your Honor heard the testimony and I recall testimony that Mr. Gocka offered that he had already explored some refinancing as we approached trial, so I would ask that your order remain as it stands.
THE COURT: I don't find the request improper. That is why I had you two come back, because I wanted my judgment to give these parties finality CT Page 12852 and I wanted to eliminate to the extent I could any uncertainty in their lives.
The Court is retaining jurisdiction over this issue. I would tell you that if I am satisfied that good faith efforts are being made to effectuate a refinance, if I am convinced that it is a situation in the market and not the dalliance of Mr. Gocka, I would be inclined to extend the period of time, but that would be upon request. It hasn't been so long that I have been out of the real estate practice. Frankly, I think 90 days is a reasonable time, but I also understand that with interest rates being what they are, it may be that lenders are not able to accommodate. I would have to understand that Mr. Gocka has taken steps to effectuate the Court order, but I would allow you to file a motion for extension of time and have it considered by this Court if you felt it was necessary.
MR. CICCHIELLO: Thank you.
MS. ECKERT: In number 5 you ordered Mr. Gocka to contribute $5,000 towards Mrs. Gocka's bills; I assume it is a contribution to Mrs. Gocka directly?
THE COURT: Yes. Because she is responsible for paying the bills.
MS. ECKERT: Understood.
THE COURT: I did state defendant is to pay the plaintiff.
MS. ECKERT: Thank you, Your Honor.
THE COURT: Any other clarifications?
MR. CICCHIELLO: Your Honor, I was writing this down, I believe you did not give Mr. Gocka a credit for the $792.
THE COURT: I chose to disallow; no credit for that, yes.
MR. CICCHIELLO: Thank you.
THE COURT: Anything further?
MR. CICCHIELLO: Nothing further.
THE COURT: Attorney Eckert? CT Page 12853
MS. ECKERT: Nothing further.
THE COURT: I previously commended counsel, I now want to wish both parties the very best of luck.
Edward Domnarski, Judge CT Page 12854